UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MIGUEL SERRANO,

        Plaintiff,

vs.                                Case No.  8:08-cv-1171-T-MCR

MICHAEL ASTRUE, Commissioner of the
Social Security Administration,

        Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision

denying his application for Social Security benefits.  The Court has reviewed the record,

the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's

decision is **REVERSED** and **REMANDED** for proceedings not inconsistent with this

opinion.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for Supplemental Security Income ("SSI")

payments on January 24, 2005, alleging an inability to work since June 1, 2003.  (Tr.

60-63).  The Social Security Administration ("SSA") denied these applications initially

and upon reconsideration. (Tr. 35-36, 40-42).  Plaintiff then requested (Tr. 44) and

received a hearing before an Administrative Law Judge (the "ALJ") on December 20,

2007.  (Tr. 244-69).  On January 24, 2008, the ALJ issued a decision finding Plaintiff

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 12).

was not disabled.  (Tr. 19-29).  Plaintiff then filed a Request for Review by the Appeals Council.  (Tr. 5).  The Appeals Council subsequently denied Plaintiff's request for review.  (Tr. 2-4).  Accordingly, the ALJ's January 24, 2008 decision was the final decision of the Commissioner.  Plaintiff timely filed his Complaint in the U.S. District Court on June 17, 2008.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    <u>Basis of Claimed Disability</u>

Plaintiff claims to be disabled since June 1, 2003, due to anxiety, bi-polar disorder, a temper control problem, and a right hand injury.  (Tr. 122).

### B.    <u>Summary of Evidence Before the ALJ</u>

On the date of the hearing before the ALJ, Plaintiff was twenty-six years of age and had completed ninth grade in Puerto Rico.  (Tr. 246, 184).  Plaintiff's past work included: day laborer, roofing helper, kitchen helper, stocker, and bus person.  (Tr. 121, 267).  Plaintiff's medical history is discussed in the ALJ's decision and will be summarized here.

On December 27, 2004, Plaintiff was treated for an injury to his hand.  (Tr. 127-144).  After his initial treatment, there is no indication Plaintiff sought further treatment for his hand injury.  On March 30, 2005, Plaintiff was physically evaluated by a consultative examiner, Dr. Efren A. Encarnacion, M.D. ("Dr. Encarnacion").  Plaintiff generally had full range of motion but Dr. Encarnacion's diagnosis included "anxiety neurosis," a "healed old fracture in third finger right hand," and "neuropathy [of the] cutaneous nerve in third finger right hand."  (Tr. 145-148).  On August 19, 2005, Plaintiff

was physically evaluated by Dr. Ronald S. Kline, M.D. ("Dr. Kline").  (Tr. 216-217).  Dr. Kline determined Plaintiff's finger impairment was not severe and did not expect any functional limitations.  (Tr. 217).

In February and July 2005, Plaintiff completed separate SSA function reports.  (Tr. 73-80, 102-109).  In February 2005, Plaintiff stated he stayed home and watched cartoons every day and did not handle stress well.  (Tr. 74, 76).  In July 2005, Plaintiff recorded that he slept all day because he could not sleep at night.  (Tr. 109).  Also, Plaintiff noted he was not very social and that he did not go outside a lot because he was scared of people.  (Tr. 104, 106).

On February 23, 2005, Plaintiff underwent a phychosocial assessment at Medical Health Care, Inc.  (Tr. 179-191).  During the assessment, Plaintiff reported experiencing "isolation, irritability, hypersomnia, lack of appetite, nervousness, and feeling mistrustful of others."  (Tr. 188).  Clinical impressions indicated Plaintiff appeared to be somewhat depressed and the provisional diagnosis included major depressive disorder.  (Tr. 179).  Plaintiff's global assessment of functioning ("GAF") was fifty.  (Tr. 179).

On April 11, 2005, Plaintiff's mental residual functional capacity ("MRFC") was assessed by Dr. Michael Dow, M.D. ("Dr. Dow").  (Tr. 163-78).  Dr. Dow determined Plaintiff had an affective disorder, which resulted in moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace.  (Tr. 167, 177).  Dr. Dow noted he saw no evidence of marked or severe limitations.  (Tr. 165).  On August 25, 2005, Plaintiff's MRFC was assessed by Dr. Martha W. Putney, M.D. ("Dr. Putney").  (Tr. 198-215).  Dr. Putney determined Plaintiff had an affective disorder, which resulted in mild restriction of activities of daily living and maintaining

concentration, persistence, or pace and moderate difficulty in maintaining social functioning. (Tr. 204, 214).

On May 10, 2005, Plaintiff was initially evaluated by his first treating physician, Dr. Luis O. Byrne, M.D. ("Dr. Byrne"). (Tr. 192-196). Dr. Byrne noted Plaintiff's mood was dysphoric and depressed, his anxiety was high, he was paranoid, and his cognitive functions were impaired. (Tr. 193). Further, Dr. Byrne's diagnostic impressions stated Plaintiff had bipolar type schizoaffective disorder and included the following statement: "[Plaintiff's] GAF is 50. He is not able to work now." (Tr. 195). Plaintiff visited Dr. Byrne three times after the initial consultation on January 24, 2006; May 9, 2006; and July 25, 2006. (Tr. 223-25). On January 24, 2006 and July 25, 2006, Dr. Byrne diagnosed Plaintiff with bipolar type schizoaffective disorder and noted his GAF was fifty. (223, 225). On May 9, 2006, Plaintiff reported an adverse reaction to Haldol, a medication given to him by Dr. Byrne. (Tr. 224). Because of the Haldol, Plaintiff developed severe dyskinesia and EPS and was sent to the emergency room. Id.

On August 21, 2006, Plaintiff was transferred from Dr. Byrne to Dr. Barbara F. Stoll, M.D. ("Dr. Stoll"). (Tr. 227-28). Plaintiff stated to Dr. Stoll that he never took the medication prescribed in July 2005 by Dr. Byrne because he feared an adverse reaction like the one he had to Haldol. (Tr. 228). Dr. Stoll did not see any psychotic symptoms that would warrant an antipsychotic drug, but gave Plaintiff a trial of Sinequan. (Tr. 227). On September 21, 2006, Plaintiff followed up with Dr. Stoll. (Tr. 229). Because Plaintiff stated Sinequan was not helping with his anger, Dr. Stoll prescribed Depakote. Id. Plaintiff next followed up with Dr. Stoll on October 30, 2006. (Tr. 230). Plaintiff reported he had not filled his prescription because of finances and thus had taken no

medication since his last visit.  Id.  Plaintiff was advised to fill his Depakote prescription before his next visit.  Id.

On December 12, 2006, Plaintiff again followed up with Dr. Stoll reporting he had not taken medication since the last visit.  (Tr. 231).  Plaintiff stated he lost the prescription.  Id.  Plaintiff's mood was aggravated and somewhat distracted.  Id.  On February 14, 2007, Plaintiff admitted he was not taking the Depakote regularly because it was upsetting to his stomach and it did not make any difference in his condition.  (Tr. 232).  Plaintiff complained of auditory hallucinations and reported depression was becoming more of a problem.  Id.  As a result, Dr. Stoll provided Plaintiff with a trial of Zoloft, an antidepressant.  Id.  On April 9, 2007, Plaintiff reported to Dr. Stoll he had been seen at CSU, a medical center, because he was feeling suicidal.  (Tr. 234).  At CSU, Plaintiff was continued on Zoloft and Risperdal and also given Restortil.  Id.  Plaintiff stated he had been feeling better and was continued on the same three prescriptions.  Id.  On May 23, 2007, Plaintiff returned, again having taken no medication in two weeks.  (Tr. 236).  Plaintiff was given the wrong strength of Risperdal and had a dystonic reaction, causing him to stop taking all medications.  Id.  Plaintiff's girlfriend and sister reported he was out of control since being off the medication.  Id.  Plaintiff was continued on Zoloft and Restoril.  Id.

On July 17, 2007, Plaintiff was seen by Dr. Annette A. Sanchez, M.D. (Dr. Sanchez).  (Tr. 237).  Plaintiff stated, "Sometimes I be fine, sometimes not.  I hear voices about dirty stuff, people arguing, if somebody looks at me bad I want to do something to him."  (Tr. 238).  Dr. Sanchez noted Plaintiff's mood was unstable and that he was prone to anger.  Id.  Because he had been poorly compliant with the Risperdal,

Plaintiff was switched to Seroquel and continued on Zoloft. (Tr. 237). On September 11, 2007, Plaintiff reported he was much calmer and no longer constantly angry when taking Seroquel. (Tr. 240). Dr. Sanchez reported that while the auditory hallucinations had stopped, Plaintiff remained paranoid and delusional. Id. Plaintiff had been taking 200 mg. of Seroquel instead of 300 mg. because he was afraid of an adverse reaction, but was again instructed to take 300 mg. (Tr. 239-40). After missing his October 16, 2007 appointment, Plaintiff last saw Dr. Sanchez on November 2, 2007. (Tr. 241). Plaintiff had not taken his medication for three weeks and his symptoms had returned. Id. Dr. Sanchez noted Plaintiff's GAF was fifty-five. Id.

On December 20, 2007, Plaintiff testified before the ALJ. (Tr. 244-69). Plaintiff testified he could speak a little English, but could not read or write English. (Tr. 247). He stated he was taking medicine to help relax and calm down (Tr. 248); however, when he did not take it, arguments would result. (Tr. 250). Plaintiff said the medication made him feel like a "zombie." (Tr. 249). Plaintiff also testified he heard voices in the past, but when he took the pills the voices would go away. (Tr. 252). Plaintiff's ex-girlfriend, Mirabelle Santiago ("Santiago") also testified at the hearing. (Tr. 255-65). Santiago stated Plaintiff cut himself in the past and she had to take him to the crisis center. (Tr. 257). Santiago also testified Plaintiff was usually by himself and did not get along with anyone. (Tr. 258).

C.    **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when he is unable to engage in a substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to either result in death or last for a continuous

period of not less than twelve (12) months.  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 416.905(a) (2008).[2]  The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. § 416.920(a).  First, if a claimant is working at a substantial gainful activity, he is not disabled.  20 C.F.R. § 416.920(a)(4)(i).  Second, if a claimant does not have any impairment or a combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 416.920(a)(4)(ii).

Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 416.920(a)(4)(iii).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 416.920(a)(4)(v).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At step one in the instant case, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date, June 1, 2003.  (Tr. 21).  At step two, the ALJ held Plaintiff had the following severe impairments: "status post fracture in the [third] finger right hand and a major depressive disorder without psychotic features."  Id.  At step three, the ALJ concluded Plaintiff did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 21-22).

---

[2]  All further references to the C.F.R. will be to the 2008 edition unless otherwise noted.

The ALJ then determined Plaintiff retained the residual functional capacity ("RFC") to "perform heavy work activity with a frequent limitation for performing tasks requiring fine manual dexterity and an occasional limitation for performing tasks requiring constant gross manual dexterity, but capable of performing routine repetitive tasks in an environment with limited contact with the public." (Tr. 20-21). In determining Plaintiff's RFC, the ALJ determined Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. (Tr. 27). The ALJ gave several reasons to question Plaintiff's credibility including that: there was no medical evidence until a year and a half after Plaintiff's alleged onset date; he found Plaintiff's statements regarding the cause of his hand injury inconsistent; Plaintiff never mentioned at the hearing his emotional state was caused by his hand injury; and Plaintiff did not keep all of his appointments in addition to being noncompliant with his medication. (Tr. 27-28).

Regarding opinion evidence, the ALJ first rejected the opinion of Dr. Byrne as "vague and unsupported by the medical evidence." (Tr. 27). The ALJ noted Dr. Byrne concluded that plaintiff was unable to work "now," but did not estimate the amount of time "now" would last. Id. Additionally, the ALJ stated Dr. Byrne's opinion was based on an initial evaluation. The ALJ also considered the opinions of the state agency psychologists, but did not give them significant evidentiary weight because he found their assessments excessive. (Tr. 28). The ALJ did give significant weight to state agency medical consultant Dr. Kline's opinion regarding Plaintiff's hand. (Tr. 28).

At step four, the ALJ utilized the testimony of a vocational expert ("VE") during the hearing to determine whether Plaintiff could perform any of his past relevant work.

(Tr. 28-29). The VE testified that an individual like Plaintiff, including his English language limitations, would be capable of performing Plaintiff's past relevant work as a floor cleaner, kitchen worker, and bus person. (Tr. 267). Additionally, the VE testified such an individual could perform other work, such as a general laborer, truck driver helper, and hand packager. (Tr. 29). Thus, the ALJ concluded Plaintiff was not disabled. (Tr. 29).

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view

9

the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**B.    Issues on Appeal**

Plaintiff argues three issues on appeal.  First, Plaintiff believes the ALJ failed to fully and adequately consider and evaluate the substantial evidence of record.  (Doc. 21, pp. 5-11, 13-14).  Second, Plaintiff claims the ALJ improperly determined Plaintiff had past relevant work.  (Doc. 21, pp. 11-12).  Third, Plaintiff argues the ALJ erred by failing to pose a complete hypothetical to the vocational expert.  (Doc. 21, pp. 12-13). The Court will examine each of these claims.

**1.  Whether the ALJ failed to fully and adequately consider and evaluate the substantial evidence of record.**

Plaintiff first argues the ALJ failed to fully and adequately consider and evaluate the substantial evidence of record.  (Doc. 21, pp. 5-11, 13-14).  Specifically, Plaintiff argues the ALJ misconstrued the evidence in making his credibility analysis, improperly rejected treating source opinions, erred in failing to re-contact Dr. Byrne, and failed to fully and adequately consider Plaintiff's illiteracy.  (Doc. 1, pp. 5-11, 13-14).  The Commissioner, however, argues the ALJ properly evaluated Plaintiff's credibility and the medical evidence of record.  (Doc. 24, pp. 4-8).  The Court will address each of these arguments.

**a.  Whether the ALJ erred in making his credibility analysis.**

Plaintiff argues the ALJ's reasons for not finding Plaintiff credible are not supported by substantial evidence.  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain or other limitations alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir.  1991)).  Once a claimant establishes through objective medical evidence an underlying medical condition exists that could reasonably be expected to produce pain, 20 C.F.R. section 416.929 provides that the Commissioner must consider evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms in deciding the issue of disability.  Foote, 67 F.3d at 1561.

In the instant case, the ALJ properly applied the Foote standard in finding Plaintiff's medically determinable impairments "could reasonably be expected to produce the alleged symptoms."  (Tr. 27).  However, the ALJ determined that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms [were] not credible."  Id.  When the ALJ makes the decision to discredit Plaintiff's

11

testimony because it is not substantiated by the medical evidence, he/she is required to provide "explicit and adequate reasons" justifying his/her decision.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Jones v. Bowen, 810 F.2d 1001, 1004 (11th Cir. 1986) and MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986)).  Additionally, the ALJ's reasons to discredit Plaintiff's testimony must be supported by substantial evidence.  See Hale, 831 F.2d at 1012.

Here, the ALJ explicitly relied on several factors in dismissing Plaintiff's credibility.  (Tr. 27-28).  First, the ALJ was concerned because there was no medical evidence until a year and a half after Plaintiff's alleged onset date.  (Tr. 27).  Second, the ALJ found Plaintiff's statements regarding his hand injury contradictory.  Id.  Third, the ALJ noted Plaintiff never mentioned the trauma to his right hand as a cause for his emotional state at the hearing.  (Tr. 28).  Last, the ALJ observed that Plaintiff missed medical appointments and failed to have prescriptions filled on multiple occasions.  (Tr. 28).

As to the first factor, the Court fails to see the significance of there being no medical evidence until after Plaintiff's alleged onset date.  For SSI claims, there is no date last insured; conversely, "a claimant becomes eligible in the first month where [he/she] is both disabled and has an SSI application on file."  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing 20 C.F.R. § 416.202-03 (2005)).  An SSI appeal simply requires "a showing of disability between [Plaintiff's application date] and the date of the ALJ's decision."  Moore, 405 F.3d at 1211.  Thus, Plaintiff's alleged onset date is completely irrelevant in the ALJ's analysis of Plaintiff's SSI claim.

Also, the Court agrees with Plaintiff's contention that the record indicated two

different hand injuries rather than Plaintiff contradicting himself. The ALJ cited three pages in the record to support his contention that Plaintiff changed the cause of his hand injury from a motorcycle incident to a gunshot wound. (See tr. 161, 191, 195). On all three occasions, only the gunshot wound is mentioned. Id. However, as Plaintiff points out, there are multiple occasions where the gunshot and motorcycle injury are mentioned together. (See tr. 64, 82). Additionally, because the ALJ had no medical records from before Plaintiff's alleged onset date in June 2003, it would follow there would be no evidence in the record of treatment for the gunshot wound in 2001. Further, if the ALJ was concerned about a possible inconsistency, he had an opportunity to question Plaintiff about it at the hearing.

The Court also finds the fact that Plaintiff never mentioned the alleged trauma to his hand as the cause of his emotional state was not an adequate reason to discredit Plaintiff's testimony. The ALJ was given the opportunity to question Plaintiff at the hearing, yet he never asked a question regarding the cause of Plaintiff's emotional state. If he desired to discredit Plaintiff based on the cause of his emotional state, the ALJ should have inquired about that cause. Plaintiff could only answer the questions he was asked.

Lastly, Plaintiff's missed medical appointments and unfilled prescriptions did not provide the substantial evidence necessary to completely undermine Plaintiff's credibility. It is not ordinarily proper for an ALJ to base a credibility assessment of an individual on that individual's failure to obtain medical treatment without first questioning him about it. Social Security Ruling 96-7 holds in pertinent part:

> In general, a longitudinal medical record demonstrating an

13

individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. . .

On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. **However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner.** The explanations provided by the individual may provide insight into the individual's credibility. For example:
* The individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms. The individual may be living with the symptoms, seeing a medical source only as needed for periodic evaluation and renewal of medications.
* The individual's symptoms may not be severe enough to prompt the individual to seek ongoing medical attention or may be relieved with over-the-counter medications.
* The individual may not take prescription medication because the side effects are less tolerable than the symptoms.
* The individual may be unable to afford treatment and may not have access to free or low-cost medical services.
* The individual may have been advised by a medical source that there is no further, effective treatment that can be prescribed and undertaken that would benefit the individual.
* Medical treatment may be contrary to the teaching and tenets of the individual's religion.

S.S.R. 96-7p (emphasis added).  In the instant case, the ALJ did not question Plaintiff about why he missed appointments or failed to have prescriptions filled.  Rather, the ALJ only questioned Plaintiff on his background and his language proficiencies, leaving the rest to Plaintiff's counsel.  (Tr. 244-48).  The record indicated Plaintiff had an allergic reaction to Haldol (Tr. 224) and was afraid to have another reaction.  (Tr. 228).  Additionally, the record indicated that on at least one occasion, Plaintiff missed an appointment because he had no car.  (Tr. 241).  Thus, the ALJ should have inquired into Plaintiff's explanations regarding unfilled prescriptions and missed appointments before he drew a negative inference.

The Commissioner suggests the fact that Plaintiff's alleged symptoms were controlled by medication undermines Plaintiff's subjective complaints.  The Court, however, declines to defer to the Commissioner's speculation as to the ALJ's reasoning.  See Owens v. Heckler, 748 F.2d 1511, 1516 n.6 (11th Cir. 1984).  Therefore, even though the Commissioner provided possible grounds[3] on which to discredit Plaintiff's testimony, there was no indication that the ALJ in fact based his conclusion on those grounds.  See id.

In sum, the ALJ did not provide adequate reasoning to reject Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms.  While the ALJ admitted Plaintiff's medically determinable impairments "could reasonably be expected to produce the alleged symptoms" (Tr. 27), he did not offer substantial evidence that Plaintiff's testimony should be discredited.   Therefore, on remand, the

_____

[3]  The Court does not determine whether the effects of Plaintiff's medication would be substantial evidence to discredit Plaintiff' testimony.

ALJ shall consider the record as a whole, making sure to address the relevant evidence and whether it supports or contradicts Plaintiff's testimony. Additionally, the ALJ shall explicitly and adequately justify his conclusions.

### b. Whether the ALJ improperly rejected treating source opinions.

Plaintiff also argues the ALJ improperly rejected the opinions of all three treating physicians. The Commissioner asserts there was no specific opinion of Dr. Sanchez or Dr. Stoll the ALJ could have either rejected or given controlling weight. Also, the Commissioner argues Dr. Byrne's opinion was properly rejected.

The opinion of a treating physician is to be given substantial weight unless "good cause" is shown to the contrary. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1240 (citing Lewis, 125 F.3d at 1440). Further, the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and failure to do so is reversible error. Lewis, 125 F.3d at 1440 (citing MacGregor, 786 F.2d at 1053).

In the instant case, Plaintiff fails to note any specific opinion of either Dr. Stoll or Dr. Sanchez that would warrant substantial weight. The only impression Dr. Stoll ever gave after her initial meeting with Plaintiff was that he had a history of "[d]epression with anger." (Tr. 227-35). Dr. Sanchez typically noted a similar impression. (Tr. 236-41). Because there was nothing other than notes regarding Plaintiff's status, there was no

opinion to assign substantial weight.

Regarding Dr. Byrne's May 10, 2005 opinion that Plaintiff was "not able to work now," Plaintiff argues it was not contradicted by any other source and thus warranted substantial weight. In rejecting Dr. Byrne's opinion, the ALJ noted Dr. Byrne gave no estimate for the length of time Plaintiff was unable to work and that the opinion was based on an initial evaluation. (Tr. 27). Thus, the ALJ rejected Dr. Byrne's opinion as "vague and unsupported by the medical evidence." (Tr. 27).

Under 20 C.F.R. section 416.927(e), opinions on issues such as whether Plaintiff is able to work "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." Adhering to that standard, Dr. Byrne's opinion that Plaintiff was "unable to work now" was not entitled to substantial weight. Additionally, because Dr. Byrne made his observation at an initial evaluation, he was not Plaintiff's treating physician at the time of the opinion. Notably, Dr. Byrne never noted Plaintiff was unable to work after the initial evaluation.

Plaintiff also argues the ALJ erred by failing to re-contact Dr. Byrne. 20 C.F.R. section 416.912(f) provides in pertinent part:

> We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

17

Here, while Dr. Byrne's opinion may have been vague as to how long Plaintiff would be unable to work, it was an opinion on an issue reserved to the commissioner. The ALJ did not have a duty to re-contact Dr. Byrne regarding an opinion that would "direct the determination or decision of disability." Thus, the ALJ did not err in rejecting Dr. Byrne's opinion that Plaintiff was "unable to work now" or in failing to re-contact Dr. Byrne.

However, the Court is concerned that the ALJ did not base his RFC finding on any medical source opinion, choosing instead to reject every opinion that did not support his conclusion. The Eleventh Circuit has held that an ALJ cannot substitute his judgment for that of the medical experts. Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982). In the instant case, the ALJ not only rejected Dr. Byrne's opinion, but also assigned little weight to the opinions of the state agency psychologists. The ALJ found the state agency psychologists' assessments "excessive and [believed] the record [was] consistent with a less severe mental impairment." (Tr. 28). Notably, the only opinion to which the ALJ assigned significant weight was the state agency consultant who expected no functional limitation in Plaintiff's hand. (Tr. 28, 217). However, the ALJ may not act as both judge and physician. Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992) (Johnson, J., concurring). Thus, the ALJ must base his RFC determination on some medical opinion evidence and/or Plaintiff's testimony.

In sum, the ALJ did not err in refusing to give significant weight to the opinions of the treating physicians. Specifically, the ALJ had reason to reject the opinion of Dr. Byrne and had no opinion from Dr. Stoll or Dr. Sanchez to assign significant weight. However, the ALJ was required to base his RFC determination on some medical opinion evidence and thus erred in that regard. Accordingly, on remand, the ALJ shall review

18

the evidence and assign specific weight to medical opinions in the record. If the ALJ

determines there is insufficient evidence in the record to make a determination, he shall

direct Plaintiff to undergo a consultative examination or take any other steps he deems

necessary.

### c. Whether the ALJ failed to fully and adequately consider Plaintiff's illiteracy.

The Court does not share Plaintiff's concerns regarding the ALJ's findings on

whether Plaintiff could read and write. While the ALJ did not mention Plaintiff's

difficulties with the English language in his decision, the VE testified based on an

individual who had a seventh grade education but could not read English and had

minimal command of the English language. (Tr. 266-68). Because the VE found

Plaintiff capable of performing several jobs based on an inability to read and limited

command of the English language, any error the ALJ made in his decision was

harmless. Id.

### 2. Whether the ALJ improperly determined Plaintiff had past relevant work.

Plaintiff further asserts the ALJ erred in finding he had past relevant work. (Doc

21, pp. 11-12). Specifically, Plaintiff argues he never worked at a substantial gainful

activity level. Id. To the extent the ALJ improperly determined Plaintiff had past

relevant work, the Court finds any error to be harmless because the vocational expert

identified three alternate jobs Plaintiff could perform with his limitations. (Tr. 267-68).

### 3. Whether the ALJ erred by failing to pose a complete hypothetical to the vocational expert.

Lastly, Plaintiff asserts the ALJ erred in failing to incorporate Plaintiff's medicinal

side effects into his hypothetical to the VE. In order for a VE's testimony to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999)). In the instant case, the VE testified Plaintiff could not work if he had certain side effects. Because this case is already being remanded on other grounds, the ALJ shall also make a finding on the side effects of Plaintiff's medication and if necessary, include that finding in his hypothetical to the VE.

## IV.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g). On remand, the ALJ shall re-evaluate Plaintiff's credibility based on the entire record, explicitly and adequately justifying his conclusion. Also, the ALJ shall re-consider the medical opinion evidence of record and, if necessary to make a finding based on substantial evidence, order a consultative examination for Plaintiff. Finally, the ALJ shall make a finding on the effects of Plaintiff's medication and if necessary, include that finding in his hypothetical to the VE. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration. **This order does not extend the time limits for filing a motion for attorney's fees under**

20

**the Equal Access to Justice Act.**

      **DONE AND ORDERED** at Jacksonville, Florida, this __13th__ day of July, 2009.


*Monte C. Richardson*
                MONTE C. RICHARDSON
     UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record